UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| Plaintiff, | : | CRIMINAL ACTION NO. |
| | : | 08-cr-004 (JCH) |
| v. | : | |
| | : | |
| ROBERT RAWLS | : | MARCH 13, 2009 |
| Defendant. | : | |
| | : | |

**RULING RE: DEFENDANT ROBERT RAWLS'S RENEWED MOTION FOR JUDGMENT OF ACQUITTAL AND MOTION FOR A NEW TRIAL (DOC. NO. 753)**

**I.    INTRODUCTION**

On January 9, 2009, a jury found the defendant, Robert Rawls, guilty of conspiracy to possess with intent to distribute, and to distribute, fifty grams or more of cocaine base ("crack cocaine" or "crack") in violation of Sections 841(a)(1) and 846 of Title 21 of the United States Code. Rawls is incarcerated and awaiting sentencing.

He now renews his earlier motion for a judgment of acquittal pursuant to Fed. R. Crim. P. 29(c) and, in the alternative, moves for a new trial pursuant to Fed. R. Crim. P. 33(a). For the following reasons, Rawls's Motion (Doc. No. 753) is denied.

**II.    FACTS**

A superceding indictment in this case charged Rawls and sixteen others with various drug offenses. Specifically, Rawls was charged with conspiring with nine other individuals to possess with intent to distribute, and to distribute, fifty grams or more of crack cocaine. Rawls, who was tried with co-defendant Chris Lamont Sherman, was convicted by a jury.

During the four-day trial in January 2009, the government presented evidence of

1

a conspiracy to distribute crack in New Haven, Connecticut led by Roshaun Hoggard. At trial, the evidence concerning the conspiracy – and Rawls's role in therein – consisted of, inter alia: (1) the testimony of cooperating witness Kenneth Thames that Thames purchased crack cocaine from Hoggard on various occasions between September and November 2007; (2) intercepted telephone calls between Hoggard and Thames communicating in a code[1] which, Thames explained, indicated various quantities of crack cocaine; (3) intercepted telephone calls between Hoggard and an individual in New York City – identified by the government as Genero Marte – which, a reasonable jury could infer, concerned Marte supplying Hoggard with powder cocaine; (4) the testimony of Special Agent Anastas Ndrenika and intercepted telephone calls between Hoggard and Marte, from which a reasonable jury could infer that on the evening of November 27, 2007, Hoggard traveled to New York City to obtain powder cocaine from Marte; (5) the testimony of Officer Daniel Sacco that police seized approximately 272 grams of powder cocaine from Chris Lamont Sherman in the early morning hours of November 28, 2007, and the testimony of Special Agent Uri Shafir, together with intercepted calls around the time of that seizure, from which a reasonable jury could conclude that Sherman had gone to New York City with Hoggard to obtain the powder cocaine that was seized; (6) intercepted telephone calls suggesting that Hoggard was interested in Sherman's arrest; (7) the testimony of Officer Michael Paleski that crack cocaine, along with a pot and kitchen utensils with cocaine residue

---

[1] Thames testified that, when making orders for drugs, he and Hoggard often used code words to indicate drug quantities.  Pursuant to this code, a "Monday" meant one-eighth of one ounce of crack cocaine, also known as an "eight-ball," "Tuesday" meant two eight-balls, "Wednesday" meant three eight-balls, and "Fortune" meant four eight-balls.  The government offered multiple intercepted calls between Hoggard and Thames in which they used these codes.

on them, were found in a safe in a residence where, the testimony asserted, Hoggard and Rawls lived; and (8) Rawls's post-arrest statements that he "didn't know [he] could be arrested for cooking the shit" and that he gave Hoggard "advice" on how to run his crack distribution organization.

On January 8, 2009, at the end of the government's case, the court made a finding ("the Bourjaily finding") that the government had proven, by a preponderance of the evidence, that Rawls was a member of the charged conspiracy. See Bourjaily v. United States, 483 U.S. 171 (1987); United States v. Geaney, 417 F.2d 1116 (2d Cir. 1969). Following this ruling, Rawls moved for a judgment of acquittal pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure. The court denied Rawls's Motion, stating that:

> There's ample evidence to demonstrate frequent contact between Mr. Rawls and Mr. Hoggard in which they are discussing . . . the price of drugs, the location of either money or drugs, [or] money related to the drugs. There are also conversations in which a reasonable jury could find that Mr. Rawls is assisting Mr. Hoggard by obtaining things, delivering things, or doing things, and most especially that he was cooking crack cocaine [for Hoggard].

Trial Transcript ("Tr.") at 538. The court also noted that a reasonable jury could find that Rawls's post-arrest statement that he did not know he could be arrested for "cooking the shit," meant that Rawls had, in fact, been converting ("cooking") cocaine powder into crack for Hoggard. Tr. 539. Finally, the court observed that a jury could reasonably infer that Rawls was assisting Hoggard from the items seized from the common areas of the apartment the two men shared. Id.

On January 9, 2009, the jury found Rawls guilty of conspiracy to possess with intent to distribute, and to distribute, fifty grams or more of crack cocaine. Rawls now

renews his Rule 29 motion to set aside the jury's verdict and enter a judgment of acquittal, and, in the alternative, moves for a new trial pursuant to Rule 33(a).

## III. STANDARD OF REVIEW

### A. Motion for Judgment of Acquittal

Rule 29(a) of the Federal Rules of Criminal Procedure provides that district courts "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Rules 29(b) and (c) permit a court to reserve the decision on the motion until after the jury returns a verdict. "A defendant challenging the sufficiency of the evidence that was the basis of his conviction at trial bears a 'heavy burden.'" United States v. Hawkins, 547 F.3d 66, 70 (2d Cir. 2008) (quoting United States v. Parkes, 497 F.3d 220, 225 (2d Cir. 2007)). In deciding whether to grant a motion pursuant to Rule 29, the court should "view the evidence in the light most favorable to the government, drawing all inferences in the government's favor and deferring to the jury's assessments of the witnesses' credibility." Hawkins, 547 F.3d at 70. A jury verdict shall be sustained "so long as any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (quoting Parkes, 497 F.3d at 225-6) (internal quotation marks omitted). "[I]f the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt." United States v. Glenn, 312 F.3d 58, 70 (2d Cir. 2002) (internal quotation marks omitted).

B.    Motion for a New Trial

In the alternative, Rawls seeks a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure.  Rule 33(a) of the Federal Rules of Criminal Procedure allows a district court to vacate "any judgment and grant a new trial if the interest of justice so requires."  The rule gives the court "broad discretion . . . to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." United States v. Ferguson, 246 F.3d 129, 133 (2d Cir. 2001) (internal citation omitted).  The court, when examining the entire case, must make an objective evaluation of the evidence and determine whether "'competent, satisfactory and sufficient evidence' in the trial record" supports the jury's verdict.  Id.  Unlike in a Rule 29 motion, where the court must draw every inference in favor of the government, in a Rule 33 motion the court is entitled to "weigh the evidence and in doing so evaluate for itself the credibility of the witnesses."  United States v. Robinson, 430 F.3d 537, 543 (2d Cir. 2005) (quoting United States v. Sanchez, 969 F.2d 1409, 1413 (2d Cir. 1992)).  However, it may not "wholly usurp the jury's role."  Id.  Although a trial court has substantially more discretion to grant a new trial under Rule 33 than it does to grant a motion for acquittal under Rule 29, the authority should be exercised "sparingly" and only in "the most extraordinary circumstances."  Sanchez, 969 F.2d at 1414.  "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice."  Ferguson, 246 F.3d at 133.  A manifest injustice is found where the court has "a real concern that an innocent person may have been convicted."  Parkes, 497 F.3d at 232.

## IV. DISCUSSION

### A. Motion for Judgment of Acquittal

Rawls argues that the evidence adduced at his trial is insufficient to sustain his conviction because he was convicted "simply because he was an associate of Hoggard." Memorandum in Support of Renewal Motion for Judgment of Acquittal and for New Trial (Doc. No. 753) ("Mem. in Supp."), at 4. He argues that "there was no evidence of Rawls selling drugs, or going to New York, or interacting with any other named conspirators," and that "the only evidence in this case connecting Rawls to drugs [is] his statement . . . that he purchased some powder cocaine from New York for his own use, as well as a statement that he had 'cooked' cocaine in the past, but was no longer doing it." Id. at 4- 5. The court disagrees.

To begin, it bears noting that Rawls does not dispute the existence of a conspiracy to possess with intent to distribute, and to distribute, crack cocaine in New Haven, Connecticut.[2] Nor does Rawls dispute that Hoggard led this conspiracy. Rather, Rawls asserts only that the government did not adduce sufficient evidence at trial to tie him to the conspiracy. This argument is without merit.

Perhaps most harmful to Rawls's argument are his post-arrest statements regarding his relationship with Hoggard and the drug trade. Immediately after being arrested and advised that he was charged with conspiracy to distribute crack cocaine, Rawls told Shelton Police Officer May Beth White that he did not know he could be

---

[2] The existence of this conspiracy was established at trial through the testimony of cooperating witness Thames, the intercepted calls between Hoggard and numerous individuals – including, inter alia, Thames and co-defendant Torrance McCown – and the testimony of various law enforcement witnesses concerning surveillance and drug seizures in New Haven.

6

arrested for "cooking the shit." Tr. 433.  Later, while being questioned by Special Agent Uri Shafir of the Drug Enforcement Administration, after again being notified that he was charged with being a member of a crack cocaine distribution organization in New Haven, Rawls told Shafir that his only function had been to "advise [Hoggard] as to how to conduct his drug business." Tr. 415.  It is the court's opinion that, given the undisputed existence of a conspiracy to distribute crack cocaine led by Hoggard, these statements alone are sufficient evidence to sustain Rawls's conviction.

The government, however, did not rely solely on these statements.  Rather, it introduced evidence of intercepted telephone calls between Rawls and Hoggard, as well as evidence of items seized from the apartment where Rawls and Hoggard lived, both of which could be used by a reasonable jury to conclude that Rawls was a member of the Hoggard conspiracy.

The evidence of intercepted calls between Rawls and Hoggard included eight calls played for the jury at trial in which, the government argued, the men discussed matters relating to the conspiracy.  In Government Exhibit 16, for example, Hoggard told Rawls of what the jury could have found was a price for powder cocaine from one of Hoggard's suppliers.  Rawls asked about the price being offered by "G," by which, the government argued, he meant co-defendant Genero Marte, Hoggard's main powder cocaine supplier.  Hoggard explained that "G's" price was higher, and that he would "probably grab like two" from the other source.  In response, Rawls said, "I'm down with it," which, the jury could have found, noted agreement or complicity with Hoggard's proposed course of action (i.e., to acquire drugs from the source with the lower price).

In Government Exhibits 93, 94, 95, and 98, Hoggard gave Rawls instructions to

prepare what the jury could have concluded were quantities of crack for resale, Rawls being at the apartment the men shared and Hoggard being on the road.  In Government Exhibit 105, Hoggard, at the apartment, sought Rawls's help in finding "the shit" Hoggard had previously given Rawls to hold.  Rawls told Hoggard, "It should be where it supposed to be, in there."  Hoggard asked, "In where?  The thing?  In the, um, you know, where we, in the living room?"[3]  The jury could have found Hoggard and Rawls were discussing the location of crack cocaine or cocaine powder.

In Government Exhibits 66 and 67, calls intercepted after agents seized 272 grams of cocaine from Sherman, Rawls and Hoggard discuss the seizure.  Rawls commiserates with Hoggard concerning the "hurt" the seizure has caused, and notes various mistakes made by Sherman and others in events that lead to the seizure.  In his Motion, Rawls argues that these calls represent nothing more than an "innocent exchange between unsophisticated male friends."  Mem. in Supp. at 5.  However, the jury could have found that the calls were the discussions of co-conspirators regarding the circumstances and consequences of a business loss.

With regard to the items seized from the apartment shared by Rawls and Hoggard, at trial the government introduced the evidence of Branford Police Officer Michael Paleski, who stated that, in the execution of a search warrant at 397 Edgewood Avenue on December 11, 2007, law enforcement agents seized a digital scale with cocaine and crack residue, as well as razor blades and a homemade crack pipe, from

---

[3] Branford Police Officer Michael Paleski subsequently testified that, during the execution of a search warrant at the Rawls/Hoggard residence, agents found a safe off the living room which contained powder cocaine, marijuana packaged for resale, packaging materials consistent with drug distribution, and kitchen utensils coated with crack residue.  See Tr. 448-453.

the common areas of the apartment (i.e., the kitchen and the living room).  Tr. 445-459.  They also seized three more digital scales with cocaine residue from the room they believed to be Hoggard's bedroom.  Id.  Finally, they seized the following items from a safe located off the living room: kitchen implements with cocaine residue (i.e., a silver ladle, a silver spoon, a silver butter knife, a metal sauce pan, a razor blade, and a small teaspoon), small plastic ziplock bags (approximately one-quarter of an inch by one-quarter of an inch), a ziplock bag of marijuana packaged as if to be sold, and a plastic baggy containing powder cocaine.  Id.  The jury could have reasonably found that the evidence seized from the Rawls/Hoggard apartment belonged to, or was accessible to and used by, Rawls and was consistent with involvement with Hoggard in a conspiracy to distribute crack cocaine.

Given that a rational jury could have convicted Rawls on the evidence introduced by the government at trial – namely, Rawls's post-arrest statements, the intercepted calls, and the items seized from the Rawls/Hoggard apartment – the court finds that Rawls has not met his burden of establishing that there was insufficient evidence to sustain his conviction.  Accordingly, the court denies Rawls's Renewed Motion for Judgment of Acquittal pursuant to Fed. R. Crim. P. 29(c).

      B.     Motion for a New Trial

Concerning his Motion for a New Trial pursuant to Fed. R. Crim. P. 33, Rawls argues that he was prejudiced by the playing of "over 100 phone calls mostly involving Hoggard's deals with his co-conspirators, his dealing with his New York supplier Marte, and several phone calls with Rawls that did not incriminate [Rawls], but were equally consistent with a conversation between friends rather than co-conspirators."  Mem. in

Supp. at 5. This argument is without merit. In order to establish the elements of the conspiracy charge against Rawls, the government had to prove, beyond a reasonable doubt, the existence of a conspiracy to distribute crack cocaine in New Haven. The government did this in part by playing numerous intercepted calls involving the alleged leader of the conspiracy (i.e., Hoggard) and his alleged co-conspirators (e.g., Thames, Marte, McCown, and Rawls) which, the government alleged, were in furtherance of the conspiracy. This was neither inappropriate nor improper, and does not require a new trial.

Rawls further argues that a new trial is required because he was prejudiced by the admission of certain out-of-court statements of alleged co-conspirators. Specifically, Rawls argues that the co-conspirators's statements were admitted erroneously because "the government failed to prove by a preponderance of the evidence both a conspiracy and that the defendant Rawls and the declarant[s] were members, and also failed to prove that the admitted statements were made in furtherance of the conspiracy." Mem. in Supp. at 7; see United States v. Geaney, 417 F.2d 1116 (2d Cir. 1969). As discussed above, however, the government introduced sufficient evidence for a reasonable jury to find the existence of a conspiracy led by Hoggard, that Rawls and the other individuals identified on the calls were members of the conspiracy, and that the conversations on the intercepted calls were in furtherance of the conspiracy. As a result, the admission of the statements of the alleged co-conspirators was not erroneous and does not warrant a new trial.

Consequently, although the court has more discretion to grant a Rule 33 motion than a Rule 29 motion, the court finds that there are no "extraordinary circumstances,"

Ferguson, 246 F.3d at 133, present in this case to warrant setting aside the jury's verdict and ordering a new trial. In examining the entire case, as it did in ruling on the Rule 29 motion, the court finds that there is sufficient evidence in the trial record to support the jury's verdict and that the jury's verdict did not result in a "manifest injustice." Therefore, the court denies Rawls's Motion for a New Trial.

**V.     CONCLUSION**

For the foregoing reasons, Rawls's Renewed Motion for Judgment of Acquittal pursuant to Fed. R. Crim. P. 29(c), and Motion for a New Trial pursuant to Fed. R. Crim. P. 33(a), (Doc. No. 753), is **DENIED**.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 13th day of March, 2009.


                                      /s/ Janet C. Hall
                                      Janet C. Hall
                                      United States District Judge